Filed 2/24/26  Soleimany v. Narimanzadeh CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| KIUMARS SOLEIMANY, et al.,<br><br>  Plaintiffs and Respondents,<br><br>  v.<br><br>MOSTAFA NARIMANZADEH, et al.,<br><br>  Defendants and Appellants. | B330589<br><br>(Los Angeles County Super. Ct. No. BC663036) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Retired Judge.  Reversed and remanded with directions.

Salisian|Lee, H. Han Pai and Jennifer S. Goldstein for Kiumars Soleimany and Shanaz "Suzy" Soleimany.

Leo Fasen, Esq. for Mostafa Narimanzadeh and Fariba Atighehchi.

_____

This is the second appeal in this litigation spanning over eight years regarding two loans made in 2008 and 2009. As we will explain, the trial court's calculation of prejudgment interest on the principal balance of the 2008 loan was erroneous. We thus reverse the judgment again and remand the matter for further proceedings.

The total principal balance for the 2008 and 2009 loans was $500,000. It is undisputed that defendants failed to pay off their respective loans by the 2009 dates of maturity, but they continued to make payments on the loans through October 30, 2015, adding up to $601,568.96.

After a bench trial held in two phases, the trial court first held that the interest rate of 16 percent on both loans was void as usurious. It then determined that the appropriate prejudgment interest rate was 10 percent on the 2009 loan, and plaintiffs were not entitled to any prejudgment interest on the 2008 loan because it was secured by a deed of trust. (See Civ. Code, § 3289, subd. (b).)[1] Applying these legal findings, the trial court concluded that defendants had in fact overpaid the loans based on the evidence presented at trial. It therefore entered judgment in favor of defendants and awarded attorney fees and costs to the defendants as prevailing parties.

Plaintiffs appealed, and a different panel of this court reversed the judgment in part on the ground that, on the 2008 loan, plaintiffs were entitled to prejudgment interest on the

---

[1] Civil Code section 3289, subdivision (b) provides that when a contract does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent; this subdivision does not apply, however, to a note secured by a deed of trust on real property.

unpaid principal at the date of maturity at the rate of 7 percent. (*Soleimany v. Narimanzadeh* (2022) 78 Cal.App.5th 915, 919 (*Soleimany I*).)  The panel remanded the matter to the trial court to conduct further proceedings on plaintiffs' potential damages incurred with respect to the 2008 loan using a prejudgment interest rate of 7 percent.  (*Ibid.*)

On remand, the trial court held a retrial on damages (the third phase of trial).  The third phase was limited to whether, after applying a prejudgment interest rate of 7 percent against any unpaid principal from the March 1, 2009 date of maturity listed in the promissory note, plaintiffs incurred any damages with respect to the 2008 loan.  Based on plaintiffs' expert testimony, the trial court concluded that $17,824 was due on the 2008 loan as of December 2022.  It further concluded that there was no prevailing party for purposes of attorney fees.  On March 29, 2023, the court entered judgment against defendants, jointly and severally, in the amount of $17,824.

Defendants now appeal from the judgment, and plaintiffs cross-appeal.  Both sides argue the trial court made several purported errors in connection with the third phase of trial. Specifically, defendants contend the trial court abused its discretion by: (1) holding defendants jointly and severally liable; (2) finding there was no prevailing party for purposes of attorney fees; (3) relying on the testimony of a non-credible witness; and (4) determining an incorrect maturity date on the 2008 loan. Plaintiffs contend the trial court erred by: (1) denying their request for restitution of monies recovered in connection with an overturned judgment; (2) not awarding judicial foreclosure; and (3) not finding plaintiffs were the prevailing parties on the contracts.

3

We agree with defendants' fourth contention. We conclude the trial court abused its discretion by granting plaintiffs' motion in limine to preclude defendants from arguing that prejudgment interest did not begin accruing until October 30, 2015—the last date defendants made a payment—rather than the 2009 maturity date stated in the promissory note. The judgment must therefore be reversed again.

On remand, the trial court shall conduct further proceedings on whether plaintiffs incurred any damages with respect to the 2008 loan after applying a prejudgment interest rate of 7 percent against any amounts of unpaid principal as of October 30, 2015. In light of such evidence, the trial court shall enter a new judgment as appropriate and reconsider which parties, if any, are prevailing parties for purposes of attorney fees.

We do not address the parties' contentions regarding attorney fees and restitution because, on remand, the trial court shall reconsider whether any party is a prevailing party for purposes of attorney fees. To provide guidance to the court and the parties on remand, however, we address the remaining arguments.

## BACKGROUND

We borrow much of our description of the factual background from *Soleimany I*.

"The relevant factual and procedural background in this case is undisputed. On September 23, 2008, defendant [Mostafa] Narimanzadeh borrowed $350,000 from plaintiffs Kiumars and Shanaz Soleimany. The loan was documented by a promissory note secured by a deed of trust on defendant Narimanzadeh's specified real property located on Chantilly Road in Los Angeles.

4

According to the note, defendant Narimanzadeh promised to repay the principal amount, plus interest at a rate of 16 percent per annum, by March 1, 2009.

"On January 14, 2009, defendant Atighehchi [Narimanzadeh's sister] borrowed $150,000 from plaintiff Shanaz Soleimany. The loan was documented by a promissory note, in which defendant Atighehchi agreed to repay the principal amount, plus interest at a rate of 16 percent per annum, by February 14, 2009, or if extended, by March 14, 2009. It was not secured by a deed of trust on real property.

"Defendants failed to pay off their respective loans by the 2009 dates of maturity. However, they continued to make payments on the loans through October 30, 2015, and at some point (the record is not clear), started paying interest at the rate of 10 percent (instead of 16 percent). The parties agreed defendants paid plaintiffs $601,568.96 but did not distinguish between the two loans.

"On November 14, 2017, plaintiffs filed the operative, first amended complaint against defendants. As to the 2008 loan, plaintiffs alleged breach of written loan agreement against defendant Narimanzadeh, and sought judicial foreclosure against Narimanzadeh's real property securing the loan. As to the 2009 loan, plaintiffs alleged breach of written loan agreement against defendant Atighehchi. Defendants conceded breach of the written loan agreements by not paying the principal on the loans by the date of maturity, but raised as an affirmative defense that the 16 percent interest rate on the loans was void as usurious.

"Pursuant to the parties' stipulation, the matter was tried to the court in two phases. In the first phase, the court considered defendants' usury affirmative defense, and, assuming

5

the 16 percent interest rate was usurious, the rate of prejudgment interest, if any, the law would apply to any unpaid principal on the loans." (*Soleimany I, supra*, 78 Cal.App.5th at pp. 919–920, fns. omitted.)

After the first phase of trial, the trial court found that the interest rate of 16 percent on both loans was void as usurious. (*Soleimany I, supra*, 78 Cal.App.5th at p. 920.) "Therefore, the loans were to be treated as if they did not specify an interest rate, and the principal (without such interest) was deemed due at maturity. Any usurious interest paid on the notes was to be applied against the principal to determine if any principal amounts were still unpaid.

"With respect to the issue of prejudgment interest on the principal due to which the law entitled plaintiffs, the court applied Civil Code section 3289, subdivision (b) to the 2009 loan, as it was not secured by a deed of trust on real property. Thus, the court determined that prejudgment interest at the legal rate of 10 percent would be due on the unpaid principal at the date of maturity. However, because Civil Code section 3289, subdivision (b) did not apply to the 2008 loan, which was secured by a deed of trust on defendant Narimanzadeh's real property, the court ruled that plaintiffs were not entitled to prejudgment interest on that loan.

"Thereafter, the court conducted the second phase of the trial to determine whether, based on its ruling in the first phase, plaintiffs were owed any sums as damages in addition to what defendants had already paid on their respective loans. Plaintiffs called one witness, Winnes Wong, CPA." (*Soleimany I*, *supra*, 78 Cal.App.5th at p. 921, fns. omitted.) Ms. Wong calculated the prejudgment interest due on the amount of the unpaid principal

from the dates of maturity listed in the promissory notes on both loans (March 1, 2009, on the 2008 loan, and March 14, 2009, on the 2009 loan), and then applied a prejudgment interest rate of 10 percent to both loans, even though the trial court had determined in the first phase that such prejudgment interest applied only to the 2009 loan. (*Ibid*.) "Ms. Wong conceded that if no prejudgment interest was attributed to the unpaid principal on the 2008 loan (as was compelled by the court's ruling in the first phase), there would be an overpayment by defendants of $84,914 on the two loans combined." (*Ibid*.)

"On such evidence, defendants orally moved for a directed verdict, based on plaintiffs' failure to establish damages. The trial court construed defendant's motion as a motion for judgment pursuant to Code of Civil Procedure section 631.8 and granted the motion. On December 17, 2019, the court issued its tentative decision, which became the final statement of decision, in which it found that plaintiffs had failed to establish damages.

"On January 13, 2020, defendants filed a motion for attorney fees and costs as prevailing parties. (Civ. Code, § 1717; Code Civ. Proc., § 1033.5.) On February 24, 2020, the court entered judgment pursuant to its statements of decisions issued on March 4, 2019, and December 17, 2019, under which plaintiffs took nothing by their operative complaint against defendants and defendants recovered from plaintiffs their costs of suit and attorney fees in amounts to be determined by the court. On February 28, 2020, plaintiffs timely appealed from the judgment. On August 20, 2020, the court granted defendants motion for attorney fees and costs in a reduced amount of $61,862.65, reflecting $59,780 in attorney fees and $2,082.65 in costs." (*Soleimany I, supra*, 78 Cal.App.5th at p. 921–922.)

7

On May 17, 2022, a different panel of this court reversed the judgment in part and the award of attorney fees and costs and remanded the matter to the trial court. The panel directed the trial court on remand to "conduct further trial proceedings on plaintiffs' potential damages, in which the parties may present evidence as to whether, using a prejudgment interest rate of 7 percent against any amounts of unpaid principal at the date of maturity, plaintiffs incurred any damages with respect to the 2008 loan. In light of such evidence, the trial court shall enter a new judgment as appropriate. Further, in light of the new judgment, the court shall reconsider as appropriate which parties (if any) are prevailing parties, and the amount of attorney fees and costs to which any such prevailing parties are entitled." (*Soleimany I*, *supra*, 78 Cal.App.5th at p. 919.)

On remand, the parties submitted new trial briefs. Defendants argued that there were two issues remaining in the case: (1) the total amount of payments made on the 2008 and 2009 loans; and (2) the "date upon which the 7% prejudgment interest rate should be based"—defendants contended it should be calculated from October 30, 2015 because plaintiffs did not make the demand for payment of the outstanding principal balance on March 1, 2009 and instead instructed Narimanzadeh to continue making payments." According to plaintiffs, however, these issues had already been decided and were outside the scope of the Court of Appeal's limited remand order. Plaintiffs therefore filed a motion in limine to exclude testimony and evidence on these issues, claiming the "only matter that remains is a simple accounting calculation with a new interest rate of 7%, for which [p]laintiffs' expert is prepared to testify."

8

The trial court granted plaintiffs' motion in limine, stating that it will not permit "testimony as to the total amount [paid on the loans] and date of maturity."[2]

The third phase of trial was held on January 4, 2023. Plaintiffs' expert, Ms. Wong, was the only witness to testify. Ms. Wong's report showed that a total of $601,568.96 was paid to plaintiffs on the loans. As stated in the trial court's statement of decision, Ms. Wong then "applied the first payments to reduce the principal, first on the 2008 loan (payments from 9/23/08-1/9/09), and then on the 2009 loan (payments from 2/9/09-3/4/09). Once interest was due on the notes, she applied the payments as follows: first to interest on the 2009 loan, second to interest on the 2008 loan, third to principal on the 2009 loan, and fourth to principal on the 2009 loan." Ms. Wong applied a 7 percent interest rate on the 2008 loan from March 2009 through September 2022. Using this methodology, "the current damages were all attributed to the 2008 loan, and was comprised of a remaining $11,890.00 in principal plus total unpaid interest of $5,727.00, totaling $17,617.00 due on the 2008 loan as of September 2022." "Ms. Wong also testified that monthly interest accrued is $69.00 per month, and adding interest from October through December 2022 would result in total balance due of $17,824.00 as of the date of trial."

The trial court found Ms. Wong's testimony to be credible and persuasive. It therefore found that plaintiffs proved their damages in the total amount of $17,824.00. It further

---

[2] Defendants do not contend the trial court erred by precluding testimony and evidence regarding the total amount of payments made. They have, therefore, abandoned this issue on appeal.

9

determined that plaintiffs were the prevailing parties for purposes of recovering costs because they received a "net monetary recovery," but found there was no prevailing party on the contracts for purposes of attorney fees given plaintiffs' limited recovery relative to the damages sought.

After the trial court entered its final Statement of Decision, plaintiffs filed a proposed judgment, which included an award of damages, prejudgment interest, costs, restitution of attorney fees plaintiffs had already paid to defendants pursuant to the original fee award, and judicial foreclosure. Defendants objected to the proposed judgment on several grounds, including that joint and several liability against defendants is improper because the operative complaint's first cause of action for breach of the 2008 loan was against Narimanzadeh only. Defendants also argued that plaintiffs' request for restitution and judicial foreclosure was outside the scope of the remittitur.

After the trial court held a hearing on the objections to the proposed judgment, on March 29, 2023, the trial court entered judgment. The judgment included an award of damages to plaintiffs in the amount of $17,824.00, as well as prejudgment interest and costs of suit in an undetermined amount, against all defendants, jointly and severally. The judgment did not include an award of restitution or judicial foreclosure.

Plaintiffs subsequently filed a motion to amend the judgment to include restitution. The trial court denied the motion on the ground that the record did not "clearly demonstrate that the [c]ourt's decision not to grant restitution requested in [p]laintiffs' proposed judgment was not the result of the exercise of judicial discretion."

10

Defendants appealed from the March 29, 2023 judgment, and plaintiffs cross-appealed.

## DISCUSSION

### I. Prejudgment Interest Accrual Date

Defendants contend the trial court abused its discretion in determining an incorrect maturity date on the 2008 loan. Stated more accurately, the issue is whether the trial court abused its discretion by granting plaintiffs' motion in limine to preclude any argument, testimony, or evidence regarding the date prejudgment interest on the 2008 loan began accruing. We conclude that it did.

After the matter was remanded to the trial court to recalculate potential damages, defendants argued—in their trial brief, joint statement, and opposition to plaintiffs' motion in limine—that prejudgment interest on the 2008 loan should be calculated from October 30, 2015 (the last date plaintiffs accepted a payment from defendants), and not, as plaintiffs urged, the March 1, 2009 maturity date listed in the promissory note. Defendants make the same argument on appeal. We agree with defendants that the accrual of prejudgment interest began on October 30, 2015, and not the loan maturity date. (See *Gibbo v. Berger* (2004) 123 Cal.App.4th 396, 403 [by accepting borrower's late payments on the loan, the lender extended the due date listed in the promissory note; thus, prejudgment interest did not begin to accrue until the borrower made a demand for payment on the promissory note several years later].)

In the proceedings below, plaintiffs did not dispute defendants' argument on the merits. Indeed, plaintiffs concede they accepted payments from defendants through October 30, 2015. Nor do they substantively dispute defendants' argument

11

on appeal. Rather, they argue that defendants are barred from arguing prejudgment interest did not begin to accrue until 2015 based on the law of the case doctrine. That doctrine, however, does not apply here.

Under the law of the case doctrine, " 'the decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1505.) In *Soleimany I*, the court stated in the "Factual and Procedural History" section of the opinion that: "Defendants failed to pay off their respective loans by the 2009 dates of maturity. However, they continued to make payments on the loans through October 30, 2015." (*Soleimany I*, *supra*, 78 Cal.App.5th at p. 920.) These statements are hardly a proclamation of the date prejudgment interest began to accrue on the 2008 loan. That precise issue was not squarely before the *Soleimany I* court. The *Soleimany I* court decided a limited issue concerning the appropriate rate of prejudgment interest on a loan that was secured by a deed of trust: "In this appeal by plaintiffs, we hold that even though Civil Code section 3289, subdivision (b) does not apply to the 2008 loan because it was secured by a deed of trust on real property, the plaintiffs were nonetheless entitled to prejudgment interest on the unpaid principal at the date of maturity at the rate of 7 percent, the default rate of prejudgment interest provided in article XV, section 1 of the California Constitution, which applies except when a statute provides otherwise." (*Soleimany I* at p. 919.) That the court in *Soleimany I* recited the maturity date listed in the 2008

12

promissory note does not demonstrate, as plaintiffs contend, that the prejudgment interest accrual date was conclusively established.

We likewise reject plaintiffs' related argument that the "[r]emittitur did not grant [the] trial court jurisdiction to reconsider" the maturity date. Again, the prejudgment interest accrual date was not squarely before the *Soleimany I* court. In conducting further proceedings on plaintiffs' potential damages, the trial court certainly had jurisdiction to determine *when* prejudgment interest began accruing.

Moreover, there is no evidence in the record demonstrating the trial court decided the prejudgment interest accrual date in the first or second phases of trial. Plaintiffs contend that the trial court determined in the first phase of trial that defendants did not fully repay both loans, "meaning the entire outstanding principal balance, together with outstanding interest, by their respective maturity dates—March 1, 2009 for the 2008 Loan and March 14, 2009 for the 2009 Loan." But that issue is not disputed—defendants concede they did not pay the principal on the loans by the dates of maturity. Defendants' argument is that, despite the listed maturity dates in the promissory notes, plaintiffs continued to accept payments on the loan until October 30, 2015, and thus, prejudgment interest should be calculated from the last day of payment. Nothing in the record shows that *this* issue was decided in the first or second phase of trial.

Lastly, we are unpersuaded by plaintiffs' argument that defendants should have appealed the trial court's purported determination of the prejudgment interest accrual date in the first judgment entered on February 20, 2020. First, as discussed above, the trial court did not decide this issue. Second, after the

13

second phase of trial, the trial court concluded plaintiffs failed to establish damages and, in fact, defendants overpaid the loans. (*Soleimany I, supra*, 78 Cal.App.5th at p. 921.)  Thus, defendants had no reason to appeal from a judgment entered in their favor.

It is undisputed plaintiffs accepted payments until October 30, 2015, and plaintiffs make no legal arguments demonstrating prejudgment interest should have accrued while they were accepting payments from defendants.  Thus, we direct the trial court on remand to conduct further proceedings on potential damages incurred in connection with the 2008 loan after applying prejudgment interest on any unpaid principal beginning on October 30, 2015.[3]

## II.  Guidance on Remand

Because we will remand the matter for the trial court to conduct further proceedings on plaintiffs' potential damages (if any), we need not and do not address the parties' arguments regarding attorney fees, namely whether there are any prevailing parties entitled to attorney fees, and whether plaintiffs are entitled to restitution of attorney fees they had already paid to defendants pursuant to the original fee award.  To provide guidance to the parties on remand, however, we address defendants' argument regarding joint and several liability, and

---

[3]     We note that, without citation to the record, defendants claim that plaintiffs only demanded full payment of the outstanding balance on both loans on April 28, 2017.  They have consistently argued, however, that prejudgment interest should be calculated from their last day of payments on the loan, October 30, 2015, and not the supposed date plaintiffs demanded full payment.

14

plaintiffs' argument regarding judicial foreclosure.  (See *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 286.)

### A.    Joint and Several Liability

Defendants argue that the trial court erred in holding them jointly and severally liable for damages with respect to the 2008 loan.  We agree.  On remand, even if plaintiffs prove they incurred damages on the 2008 loan, the operative complaint's first cause of action for breach of the 2008 promissory note is against Narimanzadeh only.  Plaintiffs allege "Narimanzadeh breached the 2008 Note by failing to make full payment of the amount due."  The complaint's prayer for relief consistently seeks damages on the first cause of action against Narimanzadeh only.

We reject plaintiffs' argument that, "despite the existence of two separate contracts and their associated documents, when viewed in their totality, both contracts were part of the same transaction and the trial court was entitled to treat them as such, including treating both breach of contract causes of action together."  It is true that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." (Civ. Code, § 1642; see also *Symonds v. Sherman* (1933) 219 Cal. 249, 253 [" 'It is a general rule that several papers relating to the same subject-matter and executed as parts of substantially one transaction, are to be construed together as one contract' "].)  But here, the promissory notes are between different parties and executed months apart.  Indeed, even plaintiffs recognized the promissory notes were separate and distinct by bringing two separate causes of action against different defendants.  That Narimanzadeh and Atighehchi are related, and that both loans

15

were supposedly used for the same business, does not demonstrate the contracts were executed as part of the same transaction. (See *Harm v. Frasher* (1960) 181 Cal.App.2d 405, 413 [the principle of joint consideration of several instruments as one agreement is applicable only when the contracts expressly refer to each other or extrinsic evidence shows they were executed as part of one transaction].)

### B.    Judicial Foreclosure

Plaintiffs argue the court erred by refusing to rule on their cause of action for judicial foreclosure. If, after a retrial on damages, the court determines plaintiffs have not incurred any damages with respect to the 2008 loan, this issue is moot. If, however, the plaintiffs are entitled to damages, we direct the trial court to consider plaintiffs' cause of action for judicial foreclosure. Despite plaintiffs seeking resolution of the judicial foreclosure cause of action in the joint statement preceding phase three of trial, and then again in response to defendants' objections to the proposed judgment, the court did not rule on this cause of action. We note, however, that under Code of Civil Procedure section 726, subdivision (a) (section 726(a)), "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property." If the issue of judicial foreclosure is not moot after a retrial on damages, the court may seek supplemental briefing from the parties regarding the applicability of section 726(a).

### DISPOSITION

The judgment entered on March 29, 2023, is reversed. On remand, the trial court shall conduct further trial proceedings on

16

whether plaintiffs incurred any damages with respect to the 2008 loan after applying a prejudgment interest rate of 7 percent against unpaid principal, if any, beginning on October 30, 2015. In light of such evidence, the trial court shall enter a new judgment as appropriate and reconsider which parties, if any, are prevailing parties for purposes of attorney fees. If plaintiffs demonstrate they incurred damages, the trial court shall also consider the issues of restitution and judicial foreclosure. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

TAMZARIAN, J.

We concur:

ZUKIN, P. J.

COLLINS, J.